H. Sarah Kim, Esq.
20 Mercer Street, Suite 3M
Hackensack, New Jersey 07601
(201) 699-0770
Attorney *Pro Se*

Shpigel Law, P.C.
Irina Shpigel, Esq.
250 Greenwich Street, 46th Floor
New York, New York 10007
(212) 390-1913
*Attorneys for Plaintiff*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SARAH H. KIM a/k/a H. SARAH KIM, | CIVIL ACTION NO. |
| Plaintiff, | |
| vs. | |
| BOROUGH OF RIDGEFIELD; ANTHONY R. SUAREZ, individually and in his official capacity; COUNCILMAN RUSSELL CASTELLI, individually and in his official capacity; COUNCILMAN HUGO JIMENEZ, individually and in his official capacity; COUNCILMAN JAMES KONTOLIOS, individually and in his official capacity; COUNCILWOMAN LAUREN LARKIN, individually and in her official capacity; STEPHEN F. PELLINO, individually and in his official capacity; RAY RAMIREZ, individually and in his official capacity; XYZ CORP. INC. (1-10); JOHN DOES (1-10) and JANE DOES (1-10) | **COMPLAINT AND JURY DEMAND** |
| Defendants. | |

## INTRODUCTION

1.      This is a civil rights action brought by Plaintiff Sarah Kim, a/k/a H. Sarah Kim (hereinafter, "KIM" or "Plaintiff") to seek relief for Defendants' violations of her rights secured by the Civil Rights Act of 1871, 42 U.S.C. §§ 1983, 1985, and 1988 and the rights secured by the First and Fourteenth Amendments to the United States Constitution and the rights secured under the New Jersey Civil Rights Act ("CRA"), New Jersey Conscientious Employee Protection Act ("CEPA"), and New Jersey Law Against Discrimination ("LAD") and the common law of the State of New Jersey.  Plaintiff sees compensatory and punitive damages, injunctive and declaratory relief, and such other relief as this Court deems equitable and just.

## PARTIES

2.      Plaintiff Kim is a woman of Asian descent and was, at all times relevant hereto, a resident of the State of New Jersey, Bergen County.

3.      Defendant Borough of Ridgefield (hereinafter, "Borough") is a municipal corporation duly incorporated and authorized under the laws of the State of New Jersey.

4.      Anthony R. Suarez (hereinafter, "Suarez") is and/or was at all times relevant herein, the Borough Mayor and a resident of the Borough. Suarez is sued in his individual and official capacities.

5.      Russell Castelli (hereinafter, "Castelli") is and/or was at all times relevant herein, a councilman and resident of the Borough. Castelli is sued in his individual and official capacities.

6.      Hugo Jimenez (hereinafter, "Jimenez") is and/or was at all times relevant herein, a councilman and resident of the Borough. Jimenez is sued in his individual and official capacities..

7.      James Kontolios (hereinafter, "Kontolios") is and/or was at all times relevant herein, a councilman and resident of the Borough. Kontolios is sued in his individual and official capacities..

8.      Lauren Larkin (hereinafter, "Larkin") is and/or was at all times relevant herein, a councilman and resident of the Borough. Larkin is sued in her individual and official capacities.

9.      Stephen F. Pellino (hereinafter, "Pellino") is and/or was at all times relevant herein, the Borough Attorney and a resident of the Borough.  He has also been the prominent leader of the Ridgefield Democratic Committee for many years and, upon information and belief, was the Chair of the Ridgefield Democratic Committee at all times relevant herein.

10.     Ray Ramirez (hereinafter, "Ramirez") is and/or was at all times relevant herein, the Borough Administrator and a resident of the Borough.

11.     At all times relevant herein, all named Defendants were acting under the color of state law in the course and scope of their duties and functions as agents, employees, officers of the Borough in engaging in the conduct described herein. At all times relevant herein, the individual Defendants have acted for on behalf of the Borough with the power and authority vested in them as officers, agents, and employees of the Borough and incident to the lawful pursuit of their duties as officers, employees, and agents of the Borough.

## JURISDICTION AND VENUE

12.     Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331 and 1343, as this action seeks redress for the violation of Plaintiff's constitutional and civil rights.

13.     Plaintiff's claims for declaratory and injunctive relief are authorized by 28 U.S.C. §§ 2201 and 2202 and Rule 57 of the Federal Rules of Civil Procedure.

14.     Plaintiff further invoke this Court's supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over any and all state constitutional and state law claims that are so related to the claims within the original jurisdiction of this Court that they form part of the same case or controversy.

**VENUE**

15.     Venue is proper in the United States District Court for New Jersey pursuant to 28 U.S.C. § 1391(b) and (c) because at least one of the Defendants resides in the District of New Jersey.

**JURY DEMAND**

16.     Plaintiff demands a trial by jury in this action on each and every one of her claims.

**NOTICE OF CLAIM**

17.     Within ninety days after claim arose, Plaintiff filed Notice of Claim upon Defendant Borough of Ridgefield by delivering copies of the notices to the person designated by law as a person to whom such claims may be served.

18.     The Borough of Ridgefield has neglected and failed to adjust the claims within the statutory time period.

**STATEMENT OF FACTS**

19.     The Mayor and Council of the Borough consists of one mayor and six council members. In 2020, when the incidents from which this action arose happened, the Mayor and Council of the Borough consisted of Suarez, Castelli, Larkin, Jimenez, Kontolios, Councilman Dennis Shim ("Shim"), and Councilman Ray Penabad.  They were all Democrats.

20.     The Mayor and Council have developed and engaged in practices and customs over a decade to discriminate and retaliate against those who are not Democrat and/or challenge Democrats' political dominance within the town. Many of the Borough residents who are not Democrat live in fear

4

and are afraid to raise their voices against the Mayor and Council. Also, often time they are excluded from being considered for job positions in the local government.

21.     Further, Suarez with the consent of the Council developed and implemented an iron-grip policy within the government to closely monitor all activities of the town employees so that nothing escaped from their sphere of influence and was done without their approval.

22.     Kim, a woman of Asian descent, is an attorney at law in the State of New Jersey.  She lives and has been living in the Borough of Ridgefield since 2017.

23.     On or about January 4, 2020, Kim was appointed as Tenant Advocate, a newly created attorney position in the Borough pursuant to Ordinance No. 2377 which became effective immediately on December 23, 2019 (hereinafter, "the Ordinance").

24.     Following the appointment, Kim started performing the duties and obligations as required and listed in the Ordinance from January, 2020.

25.     Not long after assuming the role of Tenant Advocate, however, Kim realized that the demand of the job required too much commitment than she had initially expected for an annual salary of $5,000-7,000 as defined in the Ordinance. For example, for the month of January, 2020, she had spent 10.42 hours for the job.

26.     Kim received in the mail a written employment contract titled, "Contract for Professional Services with Borough Tenant Advocate" (hereinafter, "the Contract") on or about February 3, 2020 from Borough Clerk Linda Silvestri (hereinafter, "Silvestri").

27.     The Contract stated the scope of services as follows: "The Tenant Advocate shall perform all appropriate services to tenants of the Borough of Ridgefield and attend monthly Rent Leveling meetings and attend meetings with tenants."

5

28.     The Contract also stated the payment for services as follows: "The Borough agrees to pay to the Tenant Advocate for services rendered pursuant to this agreement the sum of $6,000 annually."

29.     On February 6, 2020, Kim emailed to Pellino stating,  "I intend to allocate 5.5 hours each month for the office, including attending the Rent Levelling Board meetings (1-3 hours) and having 2 office hours (1 hour each) monthly."  She also stated that she would resign if the demand of the job required her to spend more than 5.5 hours each month.  In return, Pellino responded the same day, "That seems ok to me but let me run it by the Mayor to make sure.  Will let you know."

30.     On February 7, 2020, Pellino emailed to Kim stating, "The Mayor and I are OK with your proposed schedule.  We assume you will be flexible, if necessary, to the extent if one month is less time consuming (for example, a rent leveling meeting is cancelled for no business), you will expand the hours the following month if necessary.  I think your office hours proposed should be sufficient."

31.     In reliance of Pellino's representations, Kim subsequently signed the Contract in mid February 2020 and sent it back to Silvestri.  Upon information and belief, the Mayor signed it on March 12, 2020.

32.     On March 21, 2020, New Jersey Governor Phil Murphy announced a statewide lockdown due to the COVID 19 pandemic.

33.     Between April and July, 2020, no Rent Leveling Commission's in-person monthly meetings were held.

34.     On July 7, 2020, Kim filed a petition for general election to run as an independent candidate for the Borough Council against the slate of Suarez's candidates, Castelli and Larkin, known as the "Suarez Team."  Together with Javier Acosta, her running mate who used to be a Democrat councilman on the Borough Council, Kim ran to criticize the Mayor and Council for wasteful spending

and call for equal opportunities for people from diverse backgrounds regardless of their political affiliation.

35.     On July 7, 2020, Kim called Suarez and apprised of her decision to run against "the Suarez Team."  Suarez in response threatened Kim that, "[I]t's going to be dirty and nasty. You'd better be prepared for it."

36.     In or around early August, 2020,  Suarez, Castelli, Larkin, Jimenez, Kontolio, and Pellino convened a secreted meeting in violation of the New Jersey Open Public Meetings Act, popularly known as the "Sunshine Law," where they conspired to threaten and intimidate Kim by issuing a Rice notice and/or terminate Kim's employment as Tenant Advocate via a Rice hearing during the August Mayor and Council meeting.

37.     On August 12, 2020, Kim received a Rice notice from Pellino requesting her attendance to the August 17, 2020 meeting of the Mayor and Council. Upon information and belief, Suarez, Pellino, and Kim's two political opponents Castelli and Larkin took the lead in setting up a Rice hearing against Kim although no complaints or grievances of any nature had been made against Kim as Tenant Advocate.

38.     Kim in return requested that her hearing be adjourned and scheduled for the Mayor and Council meeting in September 2020.  Accordingly, Kim agreed to attend a Rice hearing in an open session on September 14, 2020.

39.     On August 12, 2020, Kim sought payments for her legal services as Tenant Advocate for the months of January, February, March, April, May, and June of 2020 by emailing purchase orders and invoices to Silvestri.

40.     On August 13, 2020, Kim emailed Silvestri amended purchase orders and invoices for the months of May and June, 2020.

41.     On August 13, 2020, the Rent Leveling Commission resumed its monthly meeting.

42.     On September 9, 2020, Kim wrote an internal letter within the Borough calling for an investigation into ongoing waste management issues at the Shaler Properties/Hillside Village apartment complexes in the Borough.  The letter was sent via email to Gregory Yfantis ("Yfantis") in charge of the Building Department, Branka Lulic ("Lulic") in charge of the Health Department, Joseph Greco ("Greco") in charge of the Department of Public Works, and John Hoffman ("Hoffman") in charge of the Fire Department. No one responded to Kim's letter except Lulic.

43.     On September 10, 2020, Hoffman sent an email to Ramirez asking for suggestions as to how to respond back to Kim's September 9, 2020 letter. Ramirez after running it by Suarez and Pellino directed Hoffman not to respond back to Kim regarding her September 9, 2020 letter.

44.     The same day, Lulic replied back to Kim via email.  She reported it to Pellino by forwarding her email showing Kim's email dated September 9, 2020.

45.     The following day, Lulic sent emails to Ramirez and Suarez forwarding the email she had sent to Kim on September 10, 2020.  She also sent another email to Suarez forwarding the email she had received from Kim on September 9, 2020.

46.     The same day, Silvestri emailed to Angela Gramuglia ("Gramuglia"), the Borough Accounts Payable who was working under the Borough Chief Finance Officer, Frank Elenio ("Elenio") ,  Kim's email dated August 12, 2020 containing purchase orders and invoices from January to July 2020.

47.      On September 14, 2020, the Mayor and Council held their regular monthly meeting prior to Kim's Rice hearing.  When the Mayor and Council meeting was open to the public for comments, complaints were made by two people from the audience; one against the Borough Building Department and the other against the Borough Health Department for improper and inadequate handling of public

concerns, grievances, and/or complaints.  The Mayor and Council assured the complainants that the matters complained about would be looked into and that they would be contacted by the Borough for further information.  Despite these complaints, none of the employees working in the Building Department or Health Department received a Rice notice.

48.     The Mayor and Council then proceeded into Kim's Rice hearing.  They through Pellino carried a line of inquiries against Kim to make their case that she had not properly performed job duties as Tenant Advocate, but to no avail. As a result, no disciplinary actions were made against Kim.

49.     During the hearing, Kim disclosed to the public and protested against the Mayor and Council that the hearing was illegal, improper and politically motivated by the Mayor and Council to retaliate against Kim for having run for office against the Suarez Team.

50.     Shim also objected to the Mayor and Council that the Rice hearing was illegal and improper due to the fact that the Mayor and Council had never discussed about any problems with Kim's job performance.

51.     In or around September, 2020, Shim as the councilman-liaison for the Finance Department signed and approved a check to be paid for Kim's legal services.

52.     On September 16, 2020, Gramuglia sent an email to Ramirez Kim's purchase orders and invoices. Ramirez upon running it by Suarez and Pellino directed Gramuglia not to respond to Kim.

53.     On October 19, 2020, Kim sent an email to Silvestri inquiring about payment for her professional services. Silvestri replied that she had forwarded all of Kim's purchase orders and invoices to Gramuglia and Elenio by email.

54.     Around this time, Kim complained to Shim that she had not been paid for her legal services at all.  Shim said he had signed and approved a check to be paid for Kim's legal services and was surprised that she had been paid.

55.     Shim confronted Elenio about the check he signed and approved for Kim.  Elenio stated he was ordered by Suarez personally not to pay Kim.

56.     Gramuglia and Elenio never issued any checks or payments to Kim.

57.     Kim did not prevail in the November general election.

58.     On December 16 and 17, 2020, a major snowstorm rolled into the Northeast, causing heavy precipitation in New Jersey.

59.     On or about December 18, 2020, Sean Shilinsky ("Shilinsky"), a resident of Ridgefield and secretary of Ridgefield Tenants Organization, reported to the Borough regarding snow removal and garbage emergencies presented at the Shaler Properties/Hillside Village apartment complexes.  Despite his numerous emails to the Borough officials, including but not limited to Yfantis, Lulic  and Hoffman, no one from the Borough responded to his plea for help between December 18, 2020 and December 20, 2020.

60.     On December 21, 2020 at 2:39 p.m., Suarez responded to Shilinsky's email which had been sent on December 21, 2020 at 1:07 p.m. to Suarez, Pellino, all council members, Lulic, and Hoffman.  Rather than addressing the issues raised by Shilinsky regarding snow removal and garbage emergencies, he wrote one sentence in his email, stating "Has the tenant advocate done anything to assist the tenants in this regard?"

61.     Shilinsky emailed back to Suarez at 7:00 p.m. on December 21, 2020 and said he had not contacted Kim. Suarez emailed back to Shilinsky at 7:25 p.m. and stated, again in one sentence, "It seems like the tenant advocate hasn't done anything to your knowledge re this matter."

62.     On December 22, 2020, Shilinsky contacted Kim for the first time apprising her of the snow removal and garbage emergencies that existed in the past few days.

63.     On December 23, 2020, Kim sent a letter to the landlord of the Shaler Properties/Hillside Village apartment complexes through their counsel, regarding the snow removal and garbage emergencies.  Kim never heard back from the counsel in this regard.

64.     On December 24, 2020, Kim sent purchase orders and invoices for her legal services for the months of August, September, October, and November, 2020.

65.     Kim was on vacation from December 24, 2020 to January, 4, 2021.

66.     On December 30, 2020, Suarez directed Kim via email not to communicate with the landlord of the Shaler Properties/Hillside Village apartment complexes any further and to cease performing all or any part of the Tenant Advocate's duties. Suarez terminated Kim's employment without the Council's approval.

67.     Kim received no payment for any of purchase orders and invoices she had submitted in 2020.

68.     On or about January 2, 2021, the Mayor and Council appointed a male attorney for the position of Tenant Advocate with the same duties and obligations under the Ordinance.

69.     On February 2, 2021, Kim sent the purchase order and invoice for December, 2020.

70.     Kim provided legal services for year 2020 as follows:

| | |
|---|---|
| January | 10.42 hrs |
| February | 4.09 hrs |
| March | 5.67 hrs |
| April | 0.74 hrs |
| May | 5.73 hrs |
| June | 1.72 hrs |
| July | 2.96 hrs |
| August | 6.96 hrs |
| September | 9.39 hrs |

| October | 16.29 hrs |
|---------|-----------|
| November | 0.75 hrs |
| December | 4.94 hrs |
| TOTAL | 69.66 hrs |

71.     On March 4, 2021, Pellino sent Kim a letter making unfounded accusations that Kim had failed to attend her duties as Tenant Advocate.  Pellino then stated, "The Mayor and Council believes your request for a full $6,000.00 in fees is well above what is appropriate under the circumstances.  The Mayor and Council has authorized me to offer you payment of $3,000.00 to satisfy your claims for services as Tenant Advocate for year 2020."

72.     Upon information and belief, the Mayor and Council had not had the discussion about the reduction in payment to Kim prior to March 4, 2021.

73.     Kim responded with a letter demanding payment of the full contract price on March 19, 2021.

74.     Pellino refused again to pay the fully contract price on March 23, 2021.

75.     Sometimes after March 23, 2021, the Mayor and Council had a meeting to discuss about the ongoing disputes with Kim and upon information and belief, Kim's political opponents Castelli and Larkin were not adamant in objecting to make any payments to Kim for her legal services in 2020.

76.     Upon information and belief, Kim was the only contract-based employee who had not been compensated for her services rendered in 2020.

77.     Defendants privately conversed among/between themselves to unjustly and unlawfully withhold payments for Kim's professional services.

78.     Upon information and belief, Kim was the only one who had received a Rice notice and underwent a Rice hearing in 2020.

79.     Kim was intimidated, harassed, discriminated and suffered political retaliation for having run for a seat on the Council against Castelli and Larkin and being a minority woman.

## FIRST COUNT
### Violations of 42 U.S.C. § 1983 – Procedural Due Process

80.     Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

81.     By refusing to pay for Kim's services already performed without due process of law, Defendants violated Kim's procedural due process rights.

82.     Defendants' actions, as described above, were undertaken under color of law.

83.     Defendants' actions, as described above, violated the rights, privileges, and immunities guaranteed to Plaintiff by the Constitutions of the United States and of the State of New Jersey, including without limitation the right to due process of law, and thereby constitutes a cause of action under 42 U.S.C. §1983.

84.     As a direct result of the unlawful, intentional and malicious actions of Defendants, Plaintiff suffered and continues to suffer damages.

## SECOND COUNT
### Violations of 42 U.S.C. § 1983 – Procedural Due Process

85.     Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

86.     Defendant Suarez by terminating Kim's employment without due process of law violated Kim's procedural due process rights.

87.     Suarez's action, as described above, was undertaken under color of law.

88.     Suarez's actions, as described above, violated the rights, privileges, and immunities guaranteed to Plaintiff by the Constitutions of the United States and of the State of New Jersey, including without limitation the right to due process of law, and thereby constitutes a cause of action under 42 U.S.C. §1983.

89.     As a direct result of Suarez's unlawful, intentional and malicious actions, Plaintiff suffered and continues to suffer damages.


### THIRD COUNT
**Violation of 42 U.S.C. §1983 – Substantive Due Process**

90.     Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

91.     Defendants' arbitrary, capricious and unreasonable withholding of payments for her services already performed is part of an effort to threaten, intimidate, discriminate and retaliate Kim for having run for a seat on the Borough Council and had nothing to do with her job performance as Tenant Advocate.

92.     Defendants' actions, as described above, violated the rights, privileges, and immunities guaranteed to Plaintiff by the constitutions of the United States and of the State of New Jersey, including without limitation the right to due process of law, and thereby constitute a cause of action under 42 U.S.C. § 1983.

93.     As a direct result of the unlawful, intentional and malicious actions of Defendants, Plaintiff suffered and continues to suffer damages.

### FOURTH COUNT
**Violations of 42 U.S.C. § 1983 – Substantive Due Process**

94.     Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

95.     Suarez's arbitrary, capricious and unreasonable termination of Kim's employment without due process of law is part of an effort to threaten, intimidate, discriminate and retaliate Kim for having run for a seat on the Borough Council and had nothing to do with her job performance as Tenant

96.     Defendants' actions, as described above, were undertaken under color of law.

97.     Defendants' actions, as described above, violated the rights, privileges, and immunities guaranteed to Plaintiff by the Constitutions of the United States and of the State of New Jersey, including without limitation the right to due process of law, and thereby constitutes a cause of action under 42 U.S.C. §1983.

98.     As a direct result of the unlawful, intentional and malicious actions of Defendants, Plaintiff suffered and continues to suffer damages.


**FIFTH COUNT**
**Violation of 42 U.S.C. §1983 – Equal Protection**


99.     Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

100.    Defendants intentionally singled out Plaintiff by revoking and refusing to pay her services, without any rational basis for doing so.

101.    Defendants' actions thereby denied Plaintiff her fundamental right to equal protection under the law, a right secured by the 14th Amendment to the United States Constitution.

102.    Defendants' actions, as described above, were undertaken under color of law.

103.    As a direct result of the unlawful, intentional and malicious actions of Defendants, Plaintiff suffered and continues to suffer damages.

## SIXTH COUNT

### Violation of 42 U.S.C. §1983 – First Amendment (Retaliation)

104.    Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

105.    By refusing to pay for Kim's services to intimidate, threaten, discriminate or retaliate Kim for having testified during her Rice hearing that the hearing was illegal, improper, and politically motivated by the Mayor and Council to retaliate against Kim for having run for office against Castelli and Larkin, the candidates Suarez was endorsing.

106.    Defendants' actions, as described above, were undertaken under color of law.

107.    Defendants' actions, as described above, violated the rights, privileges, and immunities guaranteed to Plaintiff by the Constitutions of the United States and of the State of New Jersey, including without limitation the right to free speech and association, and thereby constitutes a cause of action under 42 U.S.C. §1983.

108.    As a direct result of the unlawful, intentional, retaliatory, and malicious actions of Defendants, Plaintiff suffered and continues to suffer damages.

## SEVENTH COUNT

### Violation of 42 U.S.C. §1983 – First Amendment (Retaliation)

109.    Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

110.   By refusing to pay for Kim's services to intimidate, threaten, discriminate or retaliate Kim for her actual or perceived political beliefs and affiliations, Defendants violated Kim's First Amendment rights, including her right to freedom of speech and association.

111.   Defendants' actions, as described above, were undertaken under color of law.

112.   Defendants' actions, as described above, violated the rights, privileges, and immunities guaranteed to Plaintiff by the Constitutions of the United States and of the State of New Jersey, including without limitation the right to free speech and association, and thereby constitutes a cause of action under 42 U.S.C. §1983.

113.   As a direct result of the unlawful, intentional, retaliatory, and malicious actions of Defendants, Plaintiff suffered and continues to suffer damages.

## EIGHTH COUNT

### Violation of 42 U.S.C. §1985

114.   Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

115.   Defendants, acting under color of law, conspired among themselves and with others with respect to the acts and omissions described in Counts One through Six, to deny Kim her constitutional and civil rights, in violation of 42 U.S.C. §§1983 and 1985 and in violation of Plaintiff's rights as guaranteed to her by the Constitutions of the United States and the State of New Jersey.

116.   Defendants, acting under color of law, conspired among themselves and with others, as described above, to 1) withhold payments from Kim for her services already performed, 2) make Kim undergo a Rice hearing without cause, and 3) prevent and hinder Kim in the discharge of her duties as Tenant Advocate.

117.    Defendants, acting under color of law, acted in further of the conspiracy by 1) withholding payments from Kim for her services already performed, 2) making Kim undergo a Rice hearing without cause, and 3) preventing and hindering Kim in the discharge of her duties as Tenant Advocate.

118.    Defendants' participation in each violation described in Counts One through Six above, and herein, constitutes a separate conspiracy in violation of 42 U.S.C. §1985.

119.    Defendants' participation in the violations described in Counts One through Six above, and herein, collectively constitutes a conspiracy in violation of 42 U.S.C. §1985.

120.    As a direct result of the unlawful, intentional and malicious actions of Defendants, Plaintiff suffered and continues to suffer damages.

## NINETH COUNT

### Violation of New Jersey Civil Rights Act

121.    Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

122.    Defendants' participation in each violation described in Counts One through Seven above constitutes a separate violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq.

123.    Defendants' participation in the violations described in Counts One through Seven above collectively constitute a violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq.

124.    As a direct result of the unlawful, intentional and malicious actions of Defendants, Plaintiff suffered and continues to suffer damages.

## TENTH COUNT

### Violation of N.J.S.A. 34:19-1 et seq. (N.J. Conscientious Employee Protection Act)

125.    Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

126.    Defendants' decision to deny Kim payment for her legal services, without notice and hearing, was made to retaliate and punish Kim for having openly protested and criticized the Mayor and Council for holding a baseless, arbitrary, politically motivated Rice Hearing against Kim.

127.    Defendants' actions violated the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq., which prohibits, among other things, employers from retaliating against employees who disclose, or testify in a court of law about, acts by the employer that are unlawful.

128.    As a direct result of the unlawful, intentional, retaliatory, and malicious actions of Defendants, Plaintiff suffered and continues to suffer damages.

## ELEVENTH COUNT

### Breach of Public Duty

129.    Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

130.    Suarez has a duty to perform his functions and responsibilities as Mayor by taking actions and rendering decisions based upon the merits of the issue at hand and the best interests of the Borough and its residents.

131.    Instead, Suarez has made decisions and taken actions with respect to Plaintiff based upon his personal ill will towards Kim.

132.    Suarez has made decisions and taken actions with respect to Plaintiff based upon Kim's actual or perceived political affiliation.

133.    By doing so, Suarez has breached his duty to the public.

134.    As a direct result of the unlawful, intentional and malicious actions of Suarez, Plaintiff has been damaged.

## ELEVENTH COUNT

### Tortious Interference with Contract

135.    Plaintiffs repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

136.    In their individual capacities, Defendants are not a party to the employment relationship between the Borough and Kim.

137.    By taking the actions described above, Defendants intentionally, wrongfully, maliciously, and without justification or excuse, interfered with Plaintiff's existing contractual and economic relationship with the Borough.

138.    Defendants are not parties in direct competition in the same market.

139.    As a direct result of the unlawful, intentional and malicious actions of Defendants, Plaintiff was damaged.

## TWELVETH COUNT

### Tortious Interference with Prospective Economic Advantage

140.    Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

141.    Plaintiff had a reasonable expectation of economic advantage or benefit in connection with her employment by the Borough.

142.    Defendants had knowledge of such expectancy of economic advantage.

143.    In their individual capacities, Defendants are not a party to any current or prospective economic relationship between the Borough and Plaintiff.

144.    By taking the actions described above, Defendants intentionally, wrongfully, and without justification or excuse, interfered with Plaintiff's prospective economic relationship with the Borough.

145.    In the absence of Defendants' wrongful acts, it is reasonably probable that the Plaintiff would have realized her economic advantage and benefit.

146.    Defendants and Kim are not parties in direct competition in the same market.

147.    As a direct result of the unlawful, intentional, and malicious actions of Defendants, Plaintiff was damaged.

**THIRTEENTH COUNT**

**Claim for Attorney's Fees**

148.    Plaintiff repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

149.    This is an action to enforce provisions of sections 1983 and 1985 of the Civil Rights Act of 1871; the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq.; and the N.J. Conscientious Employee Protection Act, N.J.S.A. 34:19-1 et seq.

150.    Plaintiff is entitled to a reasonable attorney's fee and her costs, including expert fees, incurred in enforcing the foregoing statutes, pursuant to 42 U.S.C. §1988, N.J.S.A. 10:6-2(f), N.J.S.A. 34:19-13, and such other statutory and common law provisions as may apply.

151.

152.    She performed whistle-blowing activity described in <u>N.J.S.A.</u> 34:19-3.

153.    An adverse employment action was taken against her.

154.    A casual connection exists between the whistle-blower's activity and the adverse employment action.

155.    The actions of the Defendants were in direct violation of the New Jersey Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19-1 et seq.


## FOURTEENTH COUNT
### LAD – N.J.S.A. 10:5-1 et seq. – disparate treatment


156.    Plaintiffs repeats and reiterates the allegations of the preceding paragraphs as if set forth at length herein.

157.    Kim belongs to a protected class.

158.    She was performing her job at a level that met the employer's legitimate expections.

159.    She was nevertheless fired, and

160.    The Borough sought someone else to perform the same work after she was terminated.

161.    Defendants coerced, intimidated, threatened, or interfered with Kim in the exercise or enjoyment of her right granted or protected by the Law Against Discrimination.

162.    As a result, Plaintiff suffered damages.


**WHEREFORE**, Plaintiff demands judgment against Defendants, jointly or severally, as to all Counts of the Complaint for:

a.   Compensatory damages;

b.   Back and front pay;

c.   Punitive damages;

d.   Reasonable attorneys' fees and costs;

e.   Injunctive relief, in the form of an order of this Court enjoining Defendants from continuing or repeating their violation of Plaintiffs' Constitutional rights and of the law of this State; and

f.  Such other and further relief as this Court deems reasonable and just.

## JURY DEMAND

Plaintiff to Fe. R. Civ. P. 38 (b), Plaintiff demands trial by jury of all issues so triable.

## CERTIFICATION PURUSANT TO L. CIV. R. 11.2

The undersigned certifies, in accordance with L. Civ. R. 11.2, that to the best of his knowledge, there are no other proceedings either pending or contemplated with respect to the matter in controversy in this action and that, at this time, there are no other parties known who should be joined in this action.

By:  ____/s/ Sarah Kim_____
          SARAH KIM

Dated:  March 24, 2022