UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SARAH H. KIM a/k/a/ H. SARAH KIM,**<br><br>    **Plaintiff,**<br><br>    v.<br><br>**BOROUGH OF RIDGEFIELD; MAYOR ANTHONY R. SUAREZ, individually and in his official capacity; COUNCILMAN RUSSELL CASTELLI, individually and in his official capacity; COUNCILMAN HUGO JIMENEZ, individually and in his official capacity; COUNCILMAN JAMES KONTOLIOS, individually and in his official capacity; COUNCILWOMAN LAUREN LARKIN, individually and in her official capacity; STEPHEN F. PELLINO, individually and in his official capacity; RAY RAMIREZ, individually and in his official capacity; XYZ CORP. INC. (1-10); JOHN DOES (1-10) and JANE DOES (1-10)**<br><br>    **Defendants.** | Civ. No. 2:22-cv-01680 (WJM)<br><br>**OPINION** |

## WILLIAM J. MARTINI, U.S.D.J.

    In this discrimination and retaliation suit by plaintiff Sarah H. Kim ("Plaintiff"), defendants Borough of Ridgefield ("Borough"), Mayor Anthony R. Suarez ("Suarez") or ("Mayor"), Councilman Russell Castelli ("Castelli"), Councilman Hugo Jimenez ("Jimenez"), Councilman James Kontolios ("Kontolios"), Councilwoman Lauren Larkin ("Larkin"), Stephen F. Pellino ("Pellino"), Ray Ramirez ("Ramirez"), XYZ Corp. Inc. (1-10), John Does (1-10), and Jane Does (1-10) (collectively "Defendants"), move to dismiss Plaintiff's complaint ("Complaint") on *res judicata* grounds and pursuant to Federal Rule Civil Procedure 12(b)(6). ECF No. 5. The Court decides the matter without oral argument. Fed. R. Civ. P. 78(b). After careful consideration of the parties' submissions, and for the reasons set forth below, Defendants' motion to dismiss Counts 1-4, 6-7, 9, and 15 as to all Defendants and Count 10 as to Defendants Borough, Suarez, Castelli, Jimenez, Kontolios, and Larkin is **GRANTED** and the Court **DECLINES** to exercise supplemental jurisdiction on Counts 12-14 as to all Defendants and Count 10 as to Defendants Pellino and Ramirez.

## I. FACTUAL BACKGROUND

### A. Facts

On or about January 4, 2020, Plaintiff was appointed to a renewable one-year term as Tenant Advocate for the Borough of Ridgefield, a newly created position pursuant to Borough Ordinance No. 2377. Compl. ¶ 23, ECF. No. 1. On February 3, 2020, Plaintiff received an employment contract entitled "Contract for Professional Services with Borough Tenant Advocate."[1] *Id.* at ¶ 26. The contract allegedly stated that Plaintiff would be paid "$6,000 annually" and would require her to perform "all appropriate services to tenants of the Borough" and "attend monthly Rent Leveling meetings." *Id.* at ¶¶ 26-27. On February 6, 2020, Plaintiff emailed Defendant Pellino informing him of her intention to allocate 5.5 hours each month for the office, board meetings, and office hours. *Id.* at ¶ 29. Plaintiff also stated that she would resign if the demands of the job required her to spend more than 5.5 hours each month. *Id.* The following day, Defendant Pellino informed Plaintiff that he and Defendant Suarez were satisfied with her proposed schedule, assuming flexibility as needed. *Id.* at ¶ 30.

On March 21, 2020, New Jersey Governor Phil Murphy announced a statewide lockdown in response to the COVID-19 pandemic. *Id.* at ¶ 32. As a result, the Rent Leveling Commission did not hold any in-person monthly meetings between April and July of 2020. *Id.* at ¶ 33. On July 7, 2020, Plaintiff filed a petition to run as an independent candidate for the Borough Council against Defendants Castelli and Larkin, who were supported by Defendant Suarez. *Id.* at ¶ 34. Plaintiff alleges that after apprising Defendant Suarez of her decision to run, Defendant Suarez stated, "it's going to be dirty and nasty. You'd better be prepared for it." *Id.* at ¶ 35. Plaintiff then contends that, as a result of her decision to run for office, in early August 2020, Defendants Suarez, Castelli, Larkin, Jimenez, Kontolio, and Pellino convened a secret meeting in violation of the New Jersey Open Public Meetings Act, where they allegedly conspired to threaten and intimidate Plaintiff.

On August 12, 2020, Plaintiff received a "Rice notice"[2] from Defendant Pellino requesting her attendance at the August 17, 2020, Borough Council meeting, which was later adjourned to September 14, 2020. *Id.* at ¶¶ 37-38. The same day Plaintiff received the Rice notice, Plaintiff sought payment for her services rendered as Tenant Advocate for January through June of 2020 by emailing purchase orders and invoices to the Borough Clerk, Linda Silvestri ("Silvestri"). Compl. at ¶¶ 39-40. Silvestri forwarded Plaintiff's emails to Angela Gramuglia ("Gramuglia"), the Borough Accounts Payable. *Id.* at ¶ 46. On August 13, 2020, Plaintiff sent amended purchase orders and invoices. *Id.*

On September 14, 2020, Defendants Suarez, Castelli, Jimenez, Kontolios, Larkin, and Councilman Dennis Shim (collectively "Mayor and Council") held their regular monthly meeting prior to Plaintiff's Rice hearing. *Id.* at ¶ 47. According to Plaintiff, two complaints against the Building Department and Health Department were made for improper and

---

[1] Both Plaintiff and Defendants failed to attach the contract at issue to any of the briefings.

[2] A Rice notice is a notification that public entities must send to employees when the entity intends to consider taking adverse employment action related to them. *Kean Fed'n of Teachers v. Morell*, 187 A.3d 153, 156 (N.J. 2018)

inadequate handling of public concerns and no Rice notices were issued in response. *Id.* The Council then proceeded into Plaintiff's Rice hearing. Defendant Pellino questioned Plaintiff about the performance of her duties as Tenant Advocate. *Id.* at ¶ 48. Plaintiff protested that the hearing was itself illegal, improper, and politically motivated by the Mayor and Council to retaliate against her for running for office against Defendants Castelli and Larkin. *Id.* at ¶ 49. Councilman Shim echoed Plaintiff's objections that the hearing was illegal and improper since the Council had never previously discussed any problems regarding Plaintiff's job performance. *Id.* at ¶ 50. Ultimately no disciplinary actions were taken against Plaintiff at that time. *Id.* at ¶ 48.

On September 16, 2020, Gramuglia allegedly forwarded Plaintiff's purchase orders and invoices to Defendant Ramirez. *Id.* at ¶ 52. Plaintiff contends that upon the advice of Defendants Suarez and Pellino, Defendant Ramirez directed Gramuglia not to respond to Plaintiff. *Id.* On October 19, 2020, Plaintiff emailed Silvestri to inquire about the payment for her services to which Silvestri replied that she had forwarded all of Plaintiff's purchase orders and invoices to Gramuglia. *Id.* at ¶ 53. Plaintiff complained that she had not been paid to Councilman Shim, who was surprised because he allegedly signed and approved a check to be paid for her services. *Id.* at ¶ 54. Councilman Shim then asked the Borough Chief Finance Officer, Frank Elenio ("Elenio"), about the status of Plaintiff's payment. *Id.* at ¶ 55. Elenio allegedly stated that he was ordered by Defendant Suarez personally not to pay Plaintiff. *Id.* Gramuglia and Elenio never issued any checks to Plaintiff. *Id.* at ¶ 56. In November of 2020, Plaintiff lost the general election against Defendants Castelli and Larkin. *Id.* at ¶ 57.

After a major snowstorm in mid-December, a resident of Ridgefield contacted the Borough about the snow removal and garbage emergencies presented at the Shaler Properties/Hillside Village apartment complexes. *Id.* at ¶ 59. No one from the Borough allegedly responded to the resident between December 18 and 20, 2020. *Id.* On December 21, 2020, Defendant Suarez allegedly responded to the resident's email, asking "[h]as the tenant advocate done anything to assist the tenants in this regard?" *Id.* at ¶ 60. The resident stated he did not contact Plaintiff. Defendant Suarez responded, "[i]t seems like the tenant advocate hasn't done anything to your knowledge re[garding] this matter." *Id.* at ¶ 61. On December 22, 2020, the resident allegedly contacted Plaintiff for the first time apprising her of the snow removal and garbage emergencies that existed. *Id.* at ¶ 62. The following day, Plaintiff sent a letter to the landlord of the property at issue through their counsel and never heard back. *Id.* at ¶ 63. On December 24, 2020, Plaintiff submitted purchase orders and invoices for her legal services for August through November of 2020. *Id.* at ¶ 64.

Plaintiff went on vacation from December 24, 2020, to January 4, 2021. While she was away, Defendant Suarez directed Plaintiff via email on December 30, 2020, not to communicate with the landlord and to cease preforming all or any part of the Tenant Advocate's duties. *Id.* at ¶ 66. Defendant Suarez allegedly terminated Plaintiff's employment without the Council's approval. *Id.* On January 2, 2021, the Mayor and Council appointed an attorney as the new Tenant Advocate. *Id.* at ¶ 68. On February 2, 2021, Plaintiff sent a purchase order and invoice for December 2020. *Id.* at ¶ 69. On March 4, 2021, Defendant

Pellino sent Plaintiff a letter claiming that she failed to fulfill her duties as Tenant Advocate and stated, "[t]he Mayor and Council believes your request for a full $6,000.00 in fees is well above what is appropriate under the circumstances. The Mayor and Council has authorized me to offer you payment of $3,000.00 to satisfy your claims for services as Tenant Advocate for year 2020." *Id.* at ¶ 71. Plaintiff responded with a letter demanding full payment on March 19, 2021, to which Defendant Pellino refused on March 23, 2021. *Id.* at ¶¶ 73-74. Plaintiff alleges that Defendants conversed among and between themselves in private to unlawfully withhold payments for Plaintiff's services. *Id.* at ¶ 77. Plaintiff also contends she was the only contract-based employee who had not been compensated for services rendered in 2020. *Id.* at ¶ 76. Plaintiff claims she was the only employee who had received a Rice notice and underwent a hearing in 2020. *Id.* at ¶ 78.

### B. Superior Court Action

On June 3, 2021, Plaintiff filed a complaint in the Superior Court of New Jersey in Bergen County against the same Defendants in this action, with the addition of Elenio and Gramuglia, alleging many of the same claims. On July 26, 2021, Defendants filed a motion to dismiss for failure to state a claim. On August 17, 2021, Plaintiff filed a cross motion to amend the complaint and on September 24, 2021, the superior court partially granted Defendants' motion to dismiss without prejudice, dismissing all of Plaintiff's claims against the individual Defendants, and partially granted Plaintiff's motion to amend, allowing Plaintiff to file an amended complaint against only the Borough. On October 10, 2021, a second amended complaint[3] was filed and on November 11, 2021, Defendants filed a motion to dismiss the second amended complaint. On July 22, 2022, the superior court issued an order ("July 22 Order") vacating a previous administrative order of dismissal and dismissing Plaintiff's second amended complaint.

### C. Federal Action

On March 25, 2022, while Defendant's motion to dismiss the superior court action was pending, Plaintiff filed this 15-count complaint:
- Count 1: violation of Plaintiff's procedural due process rights under 42 U.S.C. § 1983, *see* Compl. ¶¶ 80-84;
- Count 2: violation of Plaintiff's procedural due process rights under 42 U.S.C. § 1983, *see id*. ¶¶ 85-89;
- Count 3: violation of Plaintiff's substantive due process rights under 42 U.S.C. § 1983, *see id*. ¶¶ 90-93;
- Count 4: violation of Plaintiff's substantive due process rights under 42 U.S.C. § 1983, *see id*. ¶¶ 94-98;

---

[3] The second amended complaint in the state action included the following six counts: 1) violation of 42 U.S.C. § 1983 (First Amendment Retaliation) against all Defendants; 2) violation of the New Jersey Conscientious Employee Protection Act ("CEPA"); against the Borough, Defendants Suarez, Castelli, Jimenez, Kontolios, and Larkin 3) violation of the New Jersey Civil Rights Act (First Amendment Retaliation) against all Defendants; 4) violation of the New JerseyLaw Against Discrimination ("LAD") (disparate treatment) against all Defendants; 5) violation of the LAD (hostile work environment) against all Defendants; and 6) defamation against Defendants Suarez, Castelli, and Larkin.

- Count 5: violation of the Equal Protection Clause under 42 U.S.C. § 1983, *see id*. ¶¶ 99-103;
- Count 6: retaliation of Plaintiff's free speech and association rights under 42 U.S.C. § 1983 and the First Amendment of the U.S. Constitution, *see id.* ¶¶ 104-108;
- Count 7: retaliation of Plaintiff's free speech and association rights under 42 U.S.C. § 1983 and the First Amendment of the U.S. Constitution, *see id.* ¶¶ 109-113;
- Count 8: conspiracy to interfere with Plaintiff's civil rights under 42 U.S.C. § 1985, *see id.* ¶¶ 114-120;
- Count 9: violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 *et seq.*, *see id.* ¶¶ 121-124;
- Count 10: violation of the New Jersey Conscientious Employee Protection Act, N.J.S.A. 34:19-1 *et seq.*, *see id.* ¶¶ 125-128;
- Count 11: breach of public duty, *see id.* ¶¶ 129-134;
- Count 12: tortious interference with contract, *see id.* ¶¶ 135-139;
- Count 13: tortious interference with prospective economic advantage, *see id.* ¶¶ 140-147;
- Count 14: claim for attorney's fees, *see id.* ¶¶ 148-155;
- Count 15: violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.*, *see id.* ¶¶ 156-162.

On July 5, 2022, Plaintiff voluntarily withdrew counts 5, 8, and 11. ECF. No. 16.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated, *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005), and dismissal is appropriate only if, accepting all of the facts alleged in the complaint as true, the plaintiff has failed to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). This assumption of truth is inapplicable, however, to legal conclusions couched as factual allegations or to "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). That is, although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, *see id*. at 570, such that the court may "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a probability requirement... it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678.

5

In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *Pension Benefit Guar. Corp. v. White Consol Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd*., 551 U.S. 308, 322 (2007). "[A] court may take judicial notice of the record from a previous court proceeding between the parties," *Keyes v. Nationstar Mortg., LLC*, No. 20-CV-02649, 2020 U.S. Dist. LEXIS 191958, 2020 WL 6111036, at *5 (D.N.J. Oct. 16, 2020), reconsideration denied, 2021 U.S. Dist. LEXIS 121635, 2021 WL 2651946 (D.N.J. June 28, 2021) (internal citations omitted) (citing *Toscano v. Conn, Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008)).

### III. DISCUSSION

1. Res Judicata

Defendants argue that the claims in this instant action that mirror the claims set forth in Plaintiff's second amended complaint in the superior court proceeding must be dismissed on res judicata grounds. The Court agrees.

Res judicata, or claim preclusion, bars a subsequent suit where there has been: "(1) a final judgment on the merits in a prior suit involving (2) the same claim and (3) the same parties or their privies." *E.E.O.C. v. U.S Steel Corp*., 921 F.2d 489, 493 (3d Cir. 1990) (citations omitted); *see also Marmon Coal Co. v. Eckman*, 726 F.3d 387, 394 (3d Cir. 2013) ("Res judicata bars a party from initiating a subsequent suit against the same adversary based on the same cause of action as a prior suit." (citations omitted)). "The doctrine of res judicata bars not only claims that were brought in a previous action, but also claims that could have been brought." *Duhaney v. Att'y Gen*., 621 F.3d 340, 347 (3d Cir. 2010).

As a preliminary matter, the Court may take judicial notice of a previous court proceeding between the parties. *See Keyes*, 2020 U.S. Dist. LEXIS 191958, 2020 WL 6111036, at *5 (D.N.J. Oct. 16, 2020). On July 22, 2022, Judge Thurber of the Superior Court of New Jersey in Bergen County issued an order dismissing Plaintiff's second amended complaint. *See* Letter from Defendants, Ex. B, (Aug. 25, 2022) ("Def.'s Aug. 25 Ltr."). The parties dispute whether the underlying state action was dismissed with or without prejudice. *See* Def.'s Aug. 25 Ltr.; Letter from Plaintiff, (Aug. 26, 2022) ("Pl.'s Aug. 26 Ltr."). N.J. Court Rule 4:37-2, much like Federal Rule of Civil Procedure 41(b), states that an involuntary dismissal operates as an adjudication on the merits "unless otherwise specified." N.J. Court Rule 4:37-2(d); *see also* Fed. R. Civ. P. 41 (involuntary dismissal is one the merits unless "the dismissal order states otherwise"). Here, Judge Thurber stated, "Plaintiff's Second Amended Complaint be and the same is hereby dismissed." Therefore, the superior court's dismissal of Plaintiff's second amended complaint against Defendants constitutes an adjudication on the merits and the overlapping counts are given preclusive effect. Accordingly, Defendants' motion to dismiss Counts 6-7, 9, and 15 against all Defendants is **GRANTED** and **DISMISSED WITH PREJUDICE**. Defendants' motion to dismiss Count 10 against

Defendants Borough, Suarez, Castelli, Jimenez, Kontolios, and Larkin is also **GRANTED** and **DISMISSED WITH PREJUDICE**.

    2. Failure to State a Claim

Counts 1-4 allege that Defendants violated Plaintiff's procedural and substantive due process rights by refusing to pay Plaintiff for services already preformed and terminating Plaintiff's employment in retaliation for "having run for a seat on the Borough Council and ha[ving] nothing to do with her job performance as Tenant Advocate." Compl. ¶¶ 81, 86, 92, and 95. For the reasons set forth below, Defendants' motion to dismiss Counts 1-4 is **GRANTED** and **DISMISSED WITHOUT PREJUDICE**.

    a. Procedural Due Process (Counts 1-2)

In order to establish a violation of procedural due process pursuant to a dismissal from public employment, it must be shown that: (1) the dismissal deprived plaintiff of a property interest or liberty interest, and (2) adequate procedural protections were not provided. *Richardson v. Felix,* 856 F.2d 505, 507 (3d Cir. 1988). Plaintiff argues the termination, as well as the withholding of payment, constitutes a procedural due process violation. First, termination of employment. "To have a property interest in a job, a person must have more than a unilateral expectation of continued employment; he must have a legitimate entitlement to it." *Chabal v. Reagan*, 841 F.2d 1216, 1223 (3d Cir. 1988); *see also Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 577 (1972) (finding that a one-year term employment contract that contained no right to renewal did not create a property interest beyond the term of the contract). The property interest must have an independent source of entitlement found in State law. *McKeever v. Township of Washington*, 236 F. Supp.2d 400, 404 (D.N.J. 2002) (citing *Bishop v. Wood*, 426 U.S. 341, 344, 96 S. Ct. 2074, 48 L. Ed. 2d 684 (1976)). Borough of Ridgefield Ordinance No. 2377 § IC states "[t]he Tenant Advocate shall be appointed by the Mayor with the consent of the Council for a term of one year *or until the successor is appointed and qualified*." (emphasis added). Plaintiff alleges she was instructed to cease preforming her duties as tenant advocate on December 30, 2020, without the Council's approval, and a successor was appointed on or about January 2, 2021. Compl. ¶¶ 66, 68. Plaintiff has not pled facts that establish a claim or entitlement to her employment. The Court need not discuss whether the procedural protections afforded to Plaintiff were adequate as Plaintiff failed to establish the first prong.

Plaintiff similarly fails to adequately allege that she had a constitutionally protected property interest in the payments that were withheld. Rights arising under state contract, such as here, are not constitutionally protected except in two limited instances: (1) the contract confers a protected status; or (2) the agreement is terminable by the state only for cause. *Linan-Fay Constr. Co. v. Hous. Auth.*, 49 F.3d 915, 932 (3d Cir. 1995). Neither circumstance exists in this case and Plaintiff has failed to state an actionable claim for deprivation of a constitutionally protected interest in her withheld payments.

    b. Substantive Due Process (Counts 3-4)

To establish a substantive due process claim under Section 1983, a plaintiff "must prove that it was deprived of protected property interest by arbitrary and capricious government action." *Sameric Corp. of Del., Inc. v. City of Phila.*, 142 F.3d 582, 590 (3d Cir. 1998). Plaintiff alleges her substantive due process rights were violated by Defendants withholding payments for services rendered and terminating her employment to retaliate against her for running for political office. Compl. ¶¶ 90-98. As discussed above, Plaintiff did not satisfy the property interest element. To determine whether Plaintiff was denied her interest by arbitrary and capricious government action, the Third Circuit employs a "shocks the conscience" test. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 285 (3d Cir. 2004). Although the "shocks the conscience" test is not precise and depends largely on factual context, "[w]hat is clear is that this test is designed to avoid converting federal courts into super zoning tribunals." *Id*. Instead, the Circuit has found conscience-shocking behavior where the misconduct involves "corruption, self-dealing, or a concomitant infringement on other fundamental individual liberties." *Maple Props., Inc. v. Twp. of Upper Providence*, 151 Fed. Appx. 174, 179 (3d Cir. 2005). Here, Plaintiff claims she was given a Rice notice, had a Rice hearing, was asked questions about her job performance, and was given an opportunity to speak. Compl. ¶¶ 38, 48-49. Plaintiff's discussion of corruption throughout its briefings contains speculative and conclusory allegations that does not warrant an assumption of truth. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### 3. Supplemental Jurisdiction

Plaintiff's remaining claims allege tortious interference with contract (Count 12), tortious interference with prospective economic advantage (Count 13), attorney's fees (Count 14), and violation of the New Jersey Conscientious Employee Protection Act as to Defendants Pellino and Ramirez (Count 10). "Supplemental jurisdiction allows federal courts to hear and decide state-law claims along with federal-law claims when they are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy." *Wisconsin Dept. of Corrections v. Schacht*, 524 U.S. 381, 387 (1998) (citation and internal quotation marks omitted). Where a district court has original jurisdiction pursuant to 28 U.S.C. § 1331 over federal claims and supplemental jurisdiction over state claims pursuant to 28 U.S.C. § 1367(a), the district court has discretion to decline to exercise supplemental jurisdiction if it has dismissed all claims over which it has original jurisdiction. 28 U.S.C. § 1367(c)(3); *Growth Horizons, Inc. v. Delaware County, Pennsylvania*, 983 F.2d 1277, 1284-85 (3d Cir. 1993). In exercising its discretion, "the district court should take into account generally accepted principles of 'judicial economy, convenience, and fairness to the litigants.'" *Growth Horizons, Inc.*, 983 F.2d at 1284 (quoting *United Mine Workers v. Gibbs*, 383 U.S. 715, 726 (1966)). Where the federal claims are dismissed at an early stage in the litigation, courts generally decline to exercise supplemental jurisdiction over state claims. *Gibbs*, 383 U.S. at 726; *Growth Horizons, Inc.*, 983 F.2d at 1284-85. In this case, since this Court is dismissing every claim over which it had original subject matter jurisdiction, this Court declines at this juncture to exercise supplemental jurisdiction over Count 10 as to Defendants Pellino and Ramirez and Counts 12-14 as to all Defendants, pursuant to 28 U.S.C. § 1367(c)(3).

## IV. CONCLUSION

For the reasons set forth above, this Court **GRANTS** Defendants' motion to dismiss Counts 1-4, 6-7, 9, and 15 as to all Defendants and Count 10 as to Defendants Borough, Suarez, Castelli, Jimenez, Kontolios, and Larkin and **DECLINES** to exercise supplemental jurisdiction on Counts 12-14 as to all Defendants and Count 10 as to Defendants Pellino and Ramirez.

An appropriate Order shall follow.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: September 20, 2022**